IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | | |
|---|---|---|
| **FAMILY CHOICE FINANCIAL, INC.** | | **PLAINTIFF** |
| v. | CIVIL ACTION NO.: | 5:23-cv-38-DCB-LGI |
| **UNITED STATES SMALL BUSINESS ADMINISTRATION, ISABELLA CASILLAS GUZMAN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION; JANET YELLEN, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF TREASURY; AND THE UNITED STATES OF AMERICA** | | **DEFENDANTS** |

**COMPLAINT**

COMES NOW, Family Choice Financial, Inc. ("Plaintiff or "Family Choice"), by and through its attorneys, and as for its Complaint against Defendants, the United States Small Business Administration ("SBA"), Isabella Casillas Guzman, in her official capacity as Administrator of the Small Business Administration, Janet Yellen, in her official capacity as United States Secretary of Treasury, and the United States of America ("Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.  In order to mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses. To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP") which authorizes the SBA to guarantee hundreds of billions of dollars in loans to small businesses. PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (*i.e.,* the federal government would reimburse the bank) provided that, *inter alia,* the

borrowers used most of the proceeds to pay employees' wages. 15 U.S.C. § 636(a)(36); §§ 9005-06.

2. Historically, the SBA has treated certain classes of businesses as ineligible for other SBA lending programs. 13 C.F.R. § 120.110. Aware of this, Congress purposefully set about to "[i]ncrease[] eligibility" for forgivable PPP loans, making them widely available to small businesses across the commercial spectrum. 15 U.S.C. § 636(a)(36)(D). Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that *"any* business concern ... *shall* be eligible" for a forgivable PPP loan if it met those criteria. *Id.* § 636(a)(36)(D)(i) (emphasis added).

3. Family Choice, a small loan finance company that is ineligible for loans under the SBA's traditional criteria, applied for a PPP loan on or before April 17, 2020. The lender approved the loan on April 28, 2020.

4. Despite the CARES Act's clear direction, the SBA adopted an Interim Final Rule, effective April 15, 2020, that imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility, excluding a wide range of business, including finance businesses primarily engaged in the business of lending like Plaintiff (the "Exclusion Rule"). *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020).

5. This exclusion lacks any basis in, and indeed is contrary to, the plain text, purpose, and context of the CARES Act.

6. Simply put, Congress did not pick winners and losers in the PPP. Congress recognized that COVID-19 spared no portion of the economy and clearly and unequivocally expressed its will to mitigate the effects with co-extensive support by providing temporary paycheck support to *all* Americans employed by *all* small businesses that satisfied the statute's

eligibility requirements – even businesses that may have been ineligible for SBA lending programs during normal times.

7. Contravening Congress's clearly expressed will, the SBA implemented the Exclusion Rule, declaring ineligible for participation in the PPP businesses that suffered from the COVID-19 economic downturn no less than those the SBA deemed worthy of support.

8. Having erroneously excluded entire categories of businesses, the SBA compounded its mistake by arbitrarily rolling back that exclusion for certain types of business concerns, such as casinos, which are ineligible under the traditional criteria, while maintaining the exclusion against others, including those primarily engaged in lending.

9. To make matters worse, the SBA now applies its shifting eligibility standards to refuse to forgive loans it granted to businesses – including Plaintiff – that received PPP loans in reliance of Congress's promise of loan forgiveness. Plaintiff and other businesses risked its financial security by keeping employees on payroll during the COVID-19 pandemic with the benefit of PPP loans they were eligible to receive at the time they applied for them. Now, having done everything Congress required of them, these businesses are told that they must repay their loans because of the SBA's unlawful application of its eligibility restrictions.

10. This action under the Administrative Procedure Act ("APA") challenges the SBA's adoption of the Exclusion Rule. Specifically, Plaintiff seeks a declaration that the Exclusion Rule is unenforceable with respect to forgiveness of its PPP loan.

11. Because the Exclusion Rule renders statutorily eligible business concerns ineligible for PPP loans or loan forgiveness in clear violation of the CARES Act, the Court should "hold unlawful and set aside" the Exclusion Rule. 5 U.S.C. § 706(2).

12. Furthermore, because the SBA has acted in an arbitrary and capricious manner, offering no reasoned explanation for excluding any businesses otherwise eligible for PPP loans

and forgiveness, granting forgivable PPP loans to certain businesses ineligible under the standard criteria, such as casinos, while denying others the same opportunity, and further granting forgivable PPP loans to similarly situated lending companies, while denying forgiveness to others, the Court should, for that independent reason, "hold unlawful and set aside" the Exclusion Rule. *Id*.

## PARTIES

13. Plaintiff Family Choice Financial, Inc. is a small loan finance company organized under the laws of Mississippi with its principal office located at 105 Stacy Dawn Drive McComb, Mississippi 39648.

14. Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* Under the CARES Act, the SBA administers the PPP.

15. Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for this APA cause of action. 13 C.F.R. § 101.1 01(a)(1-2).

16. Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued only in her official capacity.

17. Defendant United States of America is a proper defendant in APA cases. *See* 5 U.S.C. § 702.

## JURISDICTION & VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question. Defendants' action prohibiting "financial businesses primarily

- 4 -

engaged in the business of lending" from receiving loans that the SBA oversees, conflicts with the clear Congressional mandate set forth in the CARES Act.

19. This Court also has jurisdiction pursuant to 15 U.S.C. § 634(b)(1) which vests jurisdiction in any United States District Court to adjudicate cases against the Administrator of the SBA.

20. The jurisdiction to grant declaratory relief is conferred upon the Court by Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201.

21. The SBA's promulgation of the Exclusion Rule and the agency's denial of PPP relief to Plaintiff are final agency actions under 5 U.S.C. § 704, which this Court has authority to review under 5 U.S.C. § 702.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this judicial district and no real property is involved in the action.

## BACKGROUND

### I. SBA Lending Criteria for Other Programs

23. The SBA is "a government agency established by § 204 of the Small Business Act of 1953, 67 Stat. 233." *United States v. Peoples Household Furnishings, Inc.,* 75 F.3d 252, 253 (6th Cir. 1996). The SBA "aid[s], counsel[s], assist[s], and protect[s] ... the interests of small-business concerns." *Small Bus. Admin. v. McClellan,* 364 U.S. 446, 447 (1960). The SBA makes loans directly to small businesses, and also guarantees loans made by private lenders. *See id.*

24. In 1996, the SBA first declared certain types of businesses ineligible to participate in its lending program. This historical regulation, codified at 13 C.F.R. § 120.110, prohibits, *inter alia,* banks, life insurance companies, "[b]usinesses deriving more than one-third of gross annual

revenue from legal gambling activities," and "businesses primarily engaged in political or lobbying activities," from receiving SBA-backed loans. 13 C.F.R. § 120.110(b), (d), (g), (r).

25.  Most relevant here, the historical regulation generally excludes "[f]inancial businesses primarily engaged in the business of lending, such as ... finance companies." 13 C.F.R. § 120.110(b).

26.  Building on its historical regulation, the SBA promulgated a "Standard Operating Procedure for Lender and Development Company Loan Programs 50 10 5(K)" ("2019 SOP"), which likewise excludes "businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring." 2019 SOP, subpt. B, ch. 2(III)(A)(2). Thus, the SBA has historically denied businesses like Plaintiff access to the agency's lending programs generally.

## II. The CARES Act and the PPP

27.   In March 2020, in order to mitigate the economic crisis caused by the COVID-19 pandemic, Congress passed the CARES Act. Title I, the "Keeping American Workers Paid and Employed Act," established the PPP. *See* CARES Act, tit. I; 15 U.S.C. § 636(a)(36).

28.  "The PPP is a *new* loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.,* 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020).

29. Congress initially "provided the SBA with $349 billion" in PPP guarantee funds for "small businesses struggling to make ends meet during the COVID-19 crisis." *Am. Ass'n of Political Consultants v. U.S. Small Bus. Admin.,* No. 20-970 2020 LEXIS 69782, at *2 (D.D.C. Apr. 21, 2020), *aff'd,* 2020 U.S. App. LEXIS 16697 (D.C. Cir. May 26, 2020). The SBA, however, quickly exhausted the initial fund, and so Congress appropriated an additional $310 billion for PPP loan guarantees. *See* Paycheck Protection Program and Health Care Enhancement Act ("Enhancement Act"), Pub. L. No. 116-139, 134 Stat. 620, § 101(a)(1) (2020).

30. In the section of the CARES Act titled "Increased Eligibility for Certain Small Businesses and Organizations," Congress broadened the class of businesses eligible to receive SBA financial assistance under the PPP. 15 U.S.C. § 636(a)(36)(D). Specifically, Congress provided that "[d]uring the covered period, in addition to small business concerns, *any* business concern ... *shall* be eligible to receive a covered [*i.e.,* SBA-guaranteed] loan" if the business employs fewer than 500 employees or, "if applicable," employs fewer than the "number of employees established by the Administration for the industry in which the business concern ... operates." *Id.* § 636(a)(36)(D)(i)(I)-(II) (emphasis added).

31. Section 1106 of the CARES Act, as amended by the Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641 (2020), also sets out the conditions of loan forgiveness for PPP loan recipients. "An eligible recipient *shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b). The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness. CARES Act § 1106(c)(3). PPP loan recipients must submit forgiveness applications to be considered. *Id.* § 1106(e). But, Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower was an "eligible recipient" of the PPP loan to begin with. Loans

not forgiven will have a 2-year term or, for loans issued after June 5, 2020, a 5-year term. *See* Flexibility Act § 2(a), (b).

### III. The SBA Exclusion Rule Bait-and-Switch

32.    Plaintiff suffered significant harm from the COVID-19 pandemic, which ground nearly every segment of the economy to a halt. Small businesses were disproportionately impacted as they operate on the tightest margins and lack traditional sources of funding.

33.    Small lenders like Plaintiff bore the consequences and effects of the pandemic no differently than other businesses. Facing the same dire economic outlook as every business in America, Plaintiff grappled with how to retain its employees amidst a certain economic downtown of uncertain duration.

34.    In the face of financial hardship and challenging decisions, Plaintiff sought a forgivable PPP loan to mitigate business losses and enable it to retain employees through the economic downturn.

35.    Shortly after enactment of the PPP, the SBA adopted rules to implement and govern the PPP loan guarantees. *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020). The rules specify that forgivable PPP loans are made on a "first-come, first-served" basis. *Id.* at 20,813. The Exclusion Rule is one of these rules.

36.    Before promulgating the Exclusion Rule, the federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to *any* business with fewer than 500 employees. *See, e.g.,* SBA, *Financial Assistance from the US SBA for Small Businesses and Non-Profits,* (Mar. 31, 2020) ("Businesses ... with 500 or fewer employees may apply."), https://bit.ly/3cBC3bx; U.S. Dep't of Treas., *Small Business Paycheck Protection Program,* (Mar. 31, 2020) ("All Small Businesses Eligible"), https://bit.ly/372sJwp.

37. Relying on these kinds of statements, Family Choice applied for a PPP loan on or before April 17, 2020, through Texas Capital Bank. The lender approved Plaintiff's application on April 28, 2020. Loan proceeds were disbursed to Family Choice on April 30, 2020.

38. Notwithstanding these prior representations, the SBA issued the Exclusion Rule, with an effective date of April 15, 2020, stating that businesses "identified" in the SBA's historical guidelines, *see* 13 C.F.R. § 120.110, and "described further" in the 2019 SOP "are not eligible for PPP loans," 85 Fed. Reg. at 20,812.

39. The SBA's historical lending guidelines exclude "[f]inancial businesses primarily engaged in the business of lending," 13 C.F.R. § 120.110(b). The 2019 SOP further states that, "SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring." 2019 SOP, subpt. B, ch. 2(III)(A)(2). Thus, as applied to Plaintiff's loan, the Exclusion Rule leaves Plaintiff ineligible for PPP loan forgiveness.

40. The SBA provided no explanation for the Rule's exclusion from the PPP of most categories of businesses listed in Section 120.110. Additionally, the SBA exempted from the Rule a number of small businesses, but not small lenders, again without offering a coherent explanation of this disparate treatment.

41. The SBA promulgated the Exclusion Rule as an interim final rule without waiting to receive and respond to public comments, justifying this procedure largely because it would "allow for immediate implementation of" the PPP. *Id.* at 20,811.

### IV. The SBA Applied the Exclusion Rule to Deny Plaintiff the Loan Forgiveness Promised by the CARES Act.

42. Family Choice used its loan proceeds to meet payroll and other expenses permitted by the CARES Act. Though it experienced significant operational challenges caused by the

pandemic, Plaintiff nevertheless retained its working employees with the assistance of its PPP loan and the recovering business environment.

43. As it was entitled to do under the CARES Act, Family Choice submitted its application for loan forgiveness on August 19, 2020.

44. On an unknown date, SBA issued its final loan review decision denying forgiveness of Family Choice's loan on the ground that Plaintiff is a financial business engaged in lending, investments or an ineligible business engaged in financing or factoring.

45. On January 5, 2022, SBA's Office of Hearing and Appeal's ("OHA") denied Family Choice's appeal and affirmed the Final SBA Loan Review Decision, noting that the Administrative Law Judge did not have authority to invalidate SBA's regulations. The Decision became final thirty (30) days after service. *See* 13 § CFR 134.1211 (b).

46. Plaintiff: (a) was operating during the covered period, *id.* § 636(a)(36)(T); (b) had 500 or fewer employees, *id.* § 636(a)(36)(D)(i)(I); and (c) used its PPP loan for eligible expenses like payroll, *id.* §§ 636(a)(36)(F)(i)(I), 636m(a)(11). Despite being deemed an "essential" business or services, Plaintiff was denied forgiveness of its PPP loan on the sole ground that it is a financial business primarily engaged in the business of lending.

47. The application of the Exclusion Rule to Plaintiff has harmed and will continue to harm Plaintiff. In the midst of fluctuating economic uncertainty driven by the pandemic, Plaintiff now has to worry that the loan forgiveness it reasonably expected is unavailable. Plaintiff will now have to divert resources from other endeavors to pay off the unforeseen loan obligation. As its loan is not forgiven, Plaintiff must take costly steps in order to mitigate the financial impact of having to repay the PPP loan, which could lead to curtailing parts of the businesses to generate cash.

### V. The SBA Arbitrarily Allows Other Excluded Businesses to Obtain Forgivable PPP Loans.

48.     Since imposing the Exclusion Rule, the SBA has issued further guidance "clarifying" that certain businesses previously ineligible for SBA loans under its regulations are nevertheless now eligible for PPP loans. For example, the SBA now permits legal gambling businesses, excluded from SBA loans under 13 C.F.R. § 120.110(g), to access PPP loans. *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020).

49.     Nevertheless, the SBA continues to enforce the Exclusion Rule against businesses like Family Choice that are primarily engaged in the lending business without any explanation or justification for its differing treatment. At the time of allowing legal gambling businesses to obtain PPP loans, the SBA stated that "the Administrator ... believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses." 85 Fed. Reg. at 23,451. This reasoning applies with equal force to the business that Plaintiff operates, yet the SBA has given *no* explanation for continuing to exclude its business from the PPP while allowing other previously excluded businesses to participate.

50.     Moreover, the SBA has arbitrarily enforced the Exclusion Rule by denying loan forgiveness to many companies, including Plaintiff, simply because they are "[f]inancial businesses primarily engaged in the business of lending," while granting loan forgiveness to thousands of identically situated consumer lenders and finance companies, contrary to the APA.

### VI. Courts in Multiple Jurisdictions Have Held that the Exclusion Rule is Invalid.

51.     Since the SBA issued the Exclusion Rule, a number of courts have barred its application as contrary to law. For example, the Eastern District of Michigan enjoined the SBA from denying PPP loans to otherwise-qualified applicants on the basis of the Exclusion Rule

because the rule exceeded the SBA's statutory authority. *Nat'l Ass'n of Home Builders v. U.S. Small Business Administration,* No. 2011780, 2021 U.S. Dist. LEXIS 186548. at *35 (E.D. Mich. Sept. 28, 2021); *see also DV Diamond Club v. Small Business Administration,* 960 F.3d 743, 746-47 (6th Cir. 2020) (denying a motion for stay of injunction barring the Exclusion Rule's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on its claim that the rule conflicted with the CARES Act).

52. Other courts across the country have likewise held that the SBA's Exclusion Rule exceeds the agency's statutory authority and is arbitrary and capricious. *See, e.g., Camelot Banquet Rooms,* 458 F. Supp. 3d at 1056 (holding that the SBA's Exclusion Rule exceeded its statutory authority); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.,* No. 20-1729 (7th Cir. May 20, 2020) (order) (denying the SBA's motion for a stay pending appeal); *In re Skefos,* No. 19-29718-L, 2020 WL 2893413, at *13 (Bankr. W.D. Tenn. June 2, 2020) ("SBA acted arbitrarily and capriciously in excluding applicants whose owners are debtors in bankruptcy from the PPP."); *In re Roman Catholic Church of Archdiocese of Santa Fe,* No. 18-13027 T 1, 2020 WL 2096113, at *7 (Bankr. D.N.M. May 1, 2020) (holding that the SBA's Exclusion Rule "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds").

## CAUSES OF ACTION

### COUNT ONE
**Agency Action Contrary to Law**
5 U.S.C. § 706(2)(A), (C)

53. Plaintiff repeats and incorporates the foregoing paragraphs as if fully stated herein.

54. The APA authorizes judicial review of federal agency actions. 5 U.S.C. § 702.

55. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C).

56. The CARES Act provides that "in addition to small business concerns, *any* business concern ... *shall* be eligible to receive a covered loan," CARES Act § 1102(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the Act's size requirement, make the required good-faith borrower certification, and have been in operation as of February 15, 2020.

57. The CARES Act, as amended, also provides that all such "eligible recipient[s] *shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

58. The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Exclusion Rule.

59. Defendants' actions to exclude businesses primarily engaged in the business of lending from PPP eligibility, including for loan forgiveness, are not in accordance with law, including the CARES Act and the APA. Plaintiff is entitled to an order declaring the same.

60. Defendants' actions to exclude businesses primarily engaged in the business of lending from PPP eligibility, including for loan forgiveness, are in excess of statutory jurisdiction, authority, or limitations, and short of statutory right, in violation of the CARES Act and the APA. Plaintiff is entitled to an order declaring the same.

## COUNT TWO
### Arbitrary & Capricious Agency Action
### 5 U.S.C. § 706(2)(A)

61. Plaintiff repeats and incorporates the foregoing paragraphs as if fully stated herein.

62. The APA authorizes judicial review of federal agency actions. 5 U.S.C. § 702.

63. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious," or "an abuse of discretion." *Id.* § 706(2)(A).

64. The CARES Act provides that "in addition to small business concerns, *any* business concern ... *shall* be eligible to receive a covered loan," 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the Act's size requirement, makes the required good-faith borrower certification, and have been in operation as of February 15, 2020.

65. The CARES Act, as amended, also provides that all such "eligible recipient[s] *shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

66. The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Exclusion Rule.

67. The SBA provided no explanation for the exclusion from the PPP of most categories of businesses in 13 C.F.R. § 120.110.

68. Defendants' exclusion of businesses primarily engaged in the business of lending from PPP eligibility, including loan forgiveness, while granting PPP benefits to other businesses that were ineligible under previous SBA guidelines, including identically situated lending companies, is arbitrary and capricious and an abuse of discretion. Plaintiff is entitled to an order declaring the same.

## COUNT FOUR
**Arbitrary & Capricious Agency Action**
**5 U.S.C. § 706(2)(A)**

69. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

70. The SBA's denial of loan forgiveness to Plaintiff is arbitrary, capricious, and contrary to law. 5 U.S.C. § 706(2)(A), (C).

71. While Plaintiff believes Counts I-IV, *supra,* will provide complete relief and forgiveness of its PPP loan in full, it brings this Count out of an excess of caution, in order to assure the preservation of its rights.

72. The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff's application for loan forgiveness based upon the unlawful Exclusion Rule. Plaintiff has exhausted its administrative remedies and appeals the SBA OHA's denial of its appeal as to SBA's adverse loan forgiveness decision.

## **PRAYERS FOR RELIEF**

Wherefore, Plaintiff Family Choice, Financial, Inc., respectfully asks the Court to order the following relief:

A. Declare that the Exclusion Rule is not in accordance with law;

B. Declare that the Exclusion Rule is arbitrary and capricious;

C. Declare that the Exclusion Rule violates the Administrative Procedure Act;

D. Hold unlawful and set aside the Exclusion Rule;

E. Declare that the SBA acted contrary to law and arbitrarily and capriciously in denying loan forgiveness to Family Choice;

F. Hold unlawful and set aside SBA's final loan review decision;

G. Award costs and reasonable attorney fees to the extent permitted by law; and

H. Grant such other relief as this Court may deem just and proper.

THIS the 3rd day of May, 2023.

                                                RESPECTFULLY SUBMITTED,

BY:   */s/ Brandi S. Doss*
       Mark N. Halbert (MSB#: 100048)
       Brandi S. Doss (MSB#: 105026)
       PHELPS DUNBAR LLP
       105 East Main Street, Suite 201
       Tupelo, Mississippi 38804
       P.O. Box 1220
       Tupelo, Mississippi 38802-1220
       Telephone: (662) 842-7907
       Telecopier: (662) 842-3873
       Email: mark.halbert@phelps.com
              brandi.doss@phelps.com

ATTORNEYS FOR PLAINTIFF