IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

FAMILY CHOICE FINANCIAL, INC.                           PLAINTIFF

V.                          CIVIL ACTION NO. 5:23-cv-38-DCB-LGI

UNITED STATES SMALL BUSINESS ADMINISTRATION, et. al    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

BEFORE THE COURT are cross Motions for Summary Judgment filed by Family Choice Financial, Inc. ("Plaintiff") [ECF No. 19] and United States Small Business Administration ("SBA"), Isabella Casillas Guzman, Janet Yellen, and the Government (collectively, "Defendants") [ECF No. 25]. Both motions are fully briefed. The Court, having examined the submissions of the parties, the record, the applicable legal authority, and being fully informed in the premises, finds that Plaintiff's Motion for Summary Judgment [ECF No. 19] shall be DENIED and Defendants' Motion for Summary Judgment [ECF No. 25] shall be GRANTED.

I.   Background

Plaintiff Family Choice Financial filed this suit after SBA declined to forgive Plaintiff's small business loan taken out under the Paycheck Protection Program ("PPP"). Family Choice is a small loan finance company that by its own admission is

ineligible for loans under SBA's traditional criteria. [ECF No. 1] ¶ 3. Plaintiff sued SBA for violating the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), The Small Business Act at 15 USC § 636(a), and the Administrative Procedure Act ("APA") by failing to forgive Plaintiff's loan. [ECF No. 1] at 3. Congress created the CARES Act as a comprehensive aid package designed to provide emergency funds for the continued employment and income for small business employees. CARES ACT, Pub. L. No. 116-136, 134 Stat. 281 (2020). To that end, under the PPP Congress authorized SBA to guarantee billions of dollars in small business loans during the covered period (February 15, 2020, through June 30, 2021). 15 USC § 636(a)(36)(iii).

Section 1102(a) of the CARES Act established the new PPP as an expansion of SBA's pre-existing business-loan authority under Section 7(a) of the Small Business Act. Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281. Section 7(a) grants SBA the authority to aid small businesses by financing private "Section 7(a) loans" under the Small Business Act § 636(a), which are typically issued by private lenders rather than direct disbursals from SBA. Id.; United States v. Kimbell Foods, Inc., 440 U.S. 715, 719 n.3 (1979). The definition of "small businesses" depends upon the industry in which a business operates. 13 C.F.R. § 121.201. SBA

regulations under Section 7(a) also establish that certain businesses are categorically ineligible for an SBA business loan. 13 C.F.R. § 120.110. For example, § 120.110(b) states that "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors . . ." are not eligible for SBA business loans.

Because the CARES Act established the PPP as a part of SBA's powers under Section 7(a), the Act grants SBA the authority to guarantee covered PPP loans "under the same terms, conditions, and processes as a loan made under" Section 7(a), except as otherwise provided within the CARES Act. § 636(a)(36)(B). The Act then lists several changes to the Section 7(a) loan conditions intended to streamline the loan application, granting, and forgiveness processes. For example, during the covered period, the Act increases the number of employees a business may have while still qualifying for a loan; extends loan qualification to sole proprietors, independent contractors, and eligible self-employed individuals; and extends eligibility to non-profit organizations, which are usually disqualified from receiving Section 7(a) loans under 13 C.F.R. § 120.110(a). 15 U.S.C. §§ 636(a)(36)(D)(i),(ii),(iii)(III)(aa).

On April 15, 2020, SBA issued its First Interim Final Rule ("First IFR"), which defines SBA's authority under the PPP and

how SBA would govern the new program. Business Loan Program
Temporary Changes; Paycheck Protection Program 85 Fed. Reg.
20811-01. Specifically, the First IFR "outlined the key
provisions of the PPP" by setting forth borrower eligibility and
application requirements for PPP loans and lenders'
responsibilities under a streamlined PPP underwriting process.
Id. at 20812-15 (§ III(2)); 20815-16 (§ III(3)). Relevant here,
the First IFR created an "Exclusion Rule" which stated that
businesses "identified in 13 C.F.R. § 120.110" are "not eligible
for PPP loans," except for "nonprofit organizations authorized
by the [CARES] Act." Id. at 20812. The First IFR was posted on
SBA and Treasury websites on April 2, 2020, with an effective
date of April 15, 2020, and expressly "applie[d] to applications
submitted under the [PPP] through June 30, 2020, or until funds
made available for this purpose are exhausted." Id. at 20811-01.
Plaintiff concedes that the Exclusion Rule, if proper, would
render Plaintiff ineligible for loan forgiveness as a business
identified in 13 C.F.R. § 120.110(b) as a financial business
primarily engaged in the business of lending. [ECF No. 1] at 9.

On December 27, 2020, Congress passed the "Economic Aid to
Hard-Hit Small Businesses, Nonprofits, and Venues Act" ("EAA").
Economic Aid to Hard-Hit Small Businesses, Nonprofits, and
Venues Act, Pub.L. 116-260, Div. N, Title III, Dec. 27,
2020, 134 Stat. 1993. The EAA authorized SBA to guarantee

"second draw" PPP loans to certain businesses that had obtained first-draw PPP loans under the CARES Act. Id. at § 311(a). The EAA explicitly provided that any type of business disqualified for SBA loans under § 120.110 was also ineligible for second-draw loans, except for nonprofits and faith-based organizations described in §§ 120.110(a) and (k). Id. at § 311(a)(37)(A)(iv)(III)(aa).  Section 323(a)(1)(B) of the EAA renewed SBA's authority to guarantee "first-draw" loans under CARES Act § 1102, which had expired. One condition of this renewal was that now faith-based organizations described in 13 C.F.R. § 120.110(k) would be eligible for "first-draw" PPP loans. Id. at § 311(c)(2).

The American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (March 11, 2021), also authorized SBA to guarantee first- and second-draw loans to nonprofit organizations while expressly excluding any other type of business disqualified for SBA loans under 13 C.F.R. § 120.110. ARPA § 5001(a)(1)(A),(B); id. at § 5001(a)(2)(b)(2).

On April 28, 2020, Plaintiff applied [ECF No. 19-2] and was approved for a loan authorized by PPP as enacted in the CARES Act, i.e., "first-draw" loan. [ECF No. 19-3]. Plaintiff applied for loan forgiveness on September 3, 2020, asserting that the loan was used for the limited purposes for which forgiveness was

allowed. [ECF No. 19-4]. SBA denied the request for forgiveness, determining that Plaintiff was not eligible because it is a financial business primarily engaged in the business of lending under 13 C.F.R. § 120.110(b). [ECF No. 19-3]; [ECF No. 19-5]. Plaintiff appealed the denial to SBA's Office of Hearing and Appeals ("OHA"). OHA affirmed. [ECF No. 1] at 10.

On May 3, 2023, Plaintiff filed its Complaint under the Administrative Procedure Act ("APA"), challenging the "Exclusion Rule" under the First IFR that imposed exclusions from PPP loan eligibility and seeking a declaration from this Court that the "Exclusion Rule" is unlawful. [ECF No. 1].

Plaintiff now submits its Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 19] filed on January 11, 2024, asserting that (1) the "Exclusion Rule" was adopted in violation of the CARES Act; (2) SBA's adoption of the "Exclusion Rule" was arbitrary and capricious in violation of the APA; and (3) SBA acted arbitrarily and capriciously when it denied loan forgiveness on the basis of the "Exclusion Rule" exclusion, but granted forgiveness to other concerns in the business of lending money. [ECF No. 20] at 10-26.

Defendants filed their Response [ECF No. 24] in opposition to Plaintiff's Motion, arguing that (1) the CARES Act allows the application of 13 C.F.R. § 120.110 to the PPP, and (2) Plaintiff

fails to establish that SBA acted arbitrarily and capriciously. [ECF No. 24] at 13-22. Defendants also filed their own Motion for Summary Judgment ("Defendants' Motion") [ECF No. 25], to which they incorporate the facts and arguments made in their Response brief. Defendants finally assert that Treasury Secretary Yellen is entitled to judgment as a matter of law because Plaintiff fails to assert any claims against Secretary Yellen. [ECF No. 26] at 1-2.

In its Reply brief [ECF No. 33], Plaintiff proposes that (1) it fits the definition of businesses eligible for forgiveness under the CARES Act; (2) the CARES Act does not allow application of 13 C.F.R. § 120.110; and (3) Defendants cannot dispute the arbitrary and capricious showing made in Plaintiff's Motion. [ECF No. 33] at 4-22.

On August 5, 2024, Plaintiff filed a Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment [ECF No. 41] in light of the Supreme Court's June 2024 decision Loper Bright Enterprises v. Raimondo, 144 S.Ct. 2244 (2024). Loper overturned the Chevron doctrine of judicial deference to a federal agency's interpretation of an ambiguous statute. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). In Loper, the Supreme Court abolished Chevron deference, instead returning to review under the APA and traditional methods of

statutory interpretation. Loper Bright, 144 S.Ct. at 2263.
Plaintiff's supplemental brief presents several different
methods of traditional statutory interpretation which Plaintiff
argues support its position. [ECF No. 41]. Defendants filed a
reply brief in further support of their cross-motion for summary
judgment, stating that nothing in Plaintiff's supplemental brief
concerning the Loper decision alters analysis of the arbitrary
enforcement claim. [ECF No. 43] at 8.

## II.  Legal Standard

In a motion for summary judgment, the movant must show that
"there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." FED. R. CIV.
P. 56(a). An issue of material fact is genuine if a reasonable
jury could return a verdict for the non-movant. Anderson v.
Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that
are irrelevant or unnecessary will not be counted." Id. A party
cannot defeat a properly supported summary judgment motion by
directing the Court to conclusory allegations or presenting only
a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195
(5th Cir. 2018). Instead, the non-movant must "identify specific
evidence in the record and . . . articulate the precise manner
in which that evidence supports his or her claim." Ragas v.
Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)

(citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.), cert.
denied, 513 U.S. 871 (1994)).

The evidence must be viewed in a light most favorable to
the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d
307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek
Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The
Court neither assesses credibility nor weighs evidence at the
summary-judgment stage. Wells v. Minnesota Life Ins. Co., 885
F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered
when the nonmovant "fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III. Analysis

  A. Claims Against Secretary Yellen

As an initial matter, Defendants' Motion asserts that
Defendant Secretary Yellen is entitled to judgment as a matter
of law. [ECF No. 26] at 1, 2. Plaintiff names Secretary Yellen
in her official capacity as Secretary of the Department of the
Treasury. But neither the Complaint [ECF No. 1] nor Plaintiff's
Motion [ECF No. 19] contains any arguments alleging conduct by
Secretary Yellen or any employee of the Treasury Department
which would provide a basis for liability.

In its Response to Defendants' Motion, Plaintiff alleges
that the Treasury is a necessary party pursuant to Rule 19 of
the Federal Rules of Civil Procedure because "[t]he Treasury, in
conjunction with SBA, issued rules and guidance on how PPP loans
were to be administered," and "the relief sought . . . affects
the [Treasury's] operations or may require the Treasury to take
or refrain from specific actions . . . ." [ECF No. 31] at 3-4.
Still, Plaintiff admits that "there are no claims specific to
Secretary Yellen or other Treasury employees . . . ." [ECF No.
31] at 3. Rule 19 requires joinder of a party if "in that
person's absence, the court cannot accord complete relief among
existing parties." FED. R. CIV. P.19(1)(a). Because Plaintiff has
failed to allege any misconduct by Secretary Yellen or any other
Treasury employee, "the Treasury Secretary's presence or absence
here would have no impact on this ruling." DACO Invs., LLC v.
United States Small Bus. Admin., No. 6:22-CV-01444, 2024 WL
750594 (W.D. La. Feb. 22, 2024) at *5, motion to certify appeal
granted sub nom. Daco Invs., LLC v. US Small Bus. Admin., No.
6:22-CV-1444, 2024 WL 1887668 (W.D. La. Apr. 29, 2024) (citing
Al-Rob Corp. v. United States Small Bus. Admin., No. 8:20-CV-
1497-WFJ-JSS, 2021 WL 288968, at *2 (M.D. Fla. Jan. 28,
2021), appeal dismissed sub nom. Bantock Enterprises, LLC v.
Sec'y of Treasury of United States, No. 21-10406-HH, 2021 WL
1904332 (11th Cir. Apr. 9, 2021)).

As such, the Defendants' motion for judgment as a matter of
law as to Secretary Yellen in her official capacity as Secretary
of the Department of the Treasury is GRANTED.

B. Does the Exclusion Rule incorporated in the First IFR
   violate the CARES Act?

The APA provides that a reviewing court shall "hold unlawful
and set aside agency action, findings, and conclusions found to
be—(A) arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law…" 5 U.S.C. § 706(2)(a).
Since the Supreme Court's holding in Loper overruled Chevron,
courts have greater discretion when reviewing agency decisions.
Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024).
Courts "must exercise their independent judgment in deciding
whether an agency has acted within its statutory authority." Id.
at 2273. This Court must determine whether the CARES Act
included a delegation of authority to SBA to exclude certain
businesses from loan forgiveness which would otherwise qualify
under the Act.

The statutory language at issue includes § 636(a)(36)(B),
which grants SBA discretion over loan "terms, conditions and
processes" unaltered by the CARES Act, and §
636(a)(36)(D)(i)(I),(II), which Plaintiff argues sets the only

11

requirement for a business to qualify for a loan under the CARES Act. The relevant language is reproduced below.

> (B) PAYCHECK PROTECTION LOANS
>
> Except as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection.

§ 636(a)(36)(B).

> (D) INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS
>
> (i) IN GENERAL
>
> During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of:
>
> > (I) 500 employees; or
> >
> > (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans' organization, or Tribal business concern operates.

§ 636(a)(36)(D)(i)(I),(II).

Plaintiff claims that by incorporating 13 C.F.R. § 120.110 into the Exclusion Rule in the First IFR, SBA has violated the CARES Act, which Plaintiff maintains established only two criteria for PPP loan guarantee eligibility: (1) an application made during covered period, and (2) a business that falls within

the size limitations in § 636(a)(36)(D)(i). [ECF No. 20] at 2.
The covered period began February 15, 2020, and ended June 30,
2021. § 636(a)(36)(A)(iii).

Plaintiff points to the phrase "any business concern…shall
be eligible" in § 636(a)(36)(D)(i) as evidence that Congress
intended this provision to be the sole criterion for loan
eligibility and that SBA has no discretion to deny loans based
on any extrinsic criteria. [ECF No. 20] at 5. Plaintiff reads
the phrase "any business concern" broadly to indicate that
Congress intended to include as eligible for PPP loan
forgiveness during the covered period any business concern that
meets the relaxed size requirements regardless of eligibility
under 13 C.F.R. § 120.110. [ECF No. 20] at 2. Defendants counter
that the "any business concern" language in § 636(a)(36)(D)(i)
should be read narrowly, not as establishing the only criterion
to qualify for loan forgiveness, but as simply enlarging the
group of entities to which SBA is authorized to guarantee PPP
loans. [ECF No. 24] at 15. Therefore, Defendants argue, SBA
retains discretion to enforce unaltered eligibility regulations.

Plaintiff further maintains that the phrasing "shall be
eligible" indicates a nondiscretionary mandate to SBA; that SBA
must grant loan forgiveness to any business that meets the size
requirements. [ECF No. 20] at 14, 16. Defendants maintain that

Plaintiff's interpretation of the phrase "shall be eligible" ignores § 636(a)(36)(B), which grants SBA discretion over unaltered loan "terms, conditions, and processes." [ECF No. 24] at 15. Defendants argue that SBA may continue to enforce the unaltered provisions of 13 C.F.R. § 120.110 because the CARES Act authorized SBA to guarantee PPP loans under the same terms and conditions as other loans made by the agency (except as otherwise provided by the Act). Id. at 2.

Plaintiff argues that a proper reading of the statutory language at issue indicates that Congress did not delegate SBA authority under the CARES Act to include 13 C.F.R. § 120.110 in the First IFR's Exclusion Rule, while Defendants argue that the fact that the CARES Act was placed within the pre-existing Section 7(a) framework indicates that SBA did indeed have such authority. Id. at 16.

1. Whether Section 636(a)(36)(B) could provide a basis for delegation

Plaintiff contends that the "terms, conditions, and processes" for guaranteeing loans do not include loan eligibility, but instead refer primarily to the operational aspects of loans, such as guarantees, collateral requirements, and interest rates. Therefore, § 636(a)(36)(B) does not grant discretion to SBA over loan eligibility determinations. [ECF No.

14

33] at 9. Plaintiff suggests that SBA's First IFR indicates that
the phrase "terms, conditions, and processes" refers only to
operational aspects of a loan, not eligibility. In the First
IFR, SBA lists certain changes to the Section 7(a) loan terms
and conditions for loans issued under the CARES Act, including
the guarantee percentage, collateral requirements, and interest
rates. Business Loan Program Temporary Changes; Paycheck
Protection Program, 85 Fed. Reg. 20811-01, 20816 ((III)(4)(a)).
Plaintiff maintains that because SBA lists only operational
aspects of a loan as terms and conditions, the terms and
conditions of a PPP loan over which SBA has discretion cannot
extend to eligibility requirements. [ECF No. 41] at 10.

    Courts interpreting § 636(a)(36)(B) have not so restricted
its meaning, finding that the "terms, conditions, and processes"
of issuing a loan include determining loan eligibility. See DACO
Invs. v. United States Small Bus. Admin., No. 6:22-CV-01444,
2024 WL 750594, at *9 n.93 (W.D. La. Feb. 22, 2024), motion to
certify appeal granted sub nom. Daco Invs., LLC v. US Small Bus.
Admin., No. 6:22-CV-1444, 2024 WL 1887668 (W.D. La. Apr. 29,
2024); In re Gateway Radiology Consultants, P.A., 983 F.3d 1239,
1257 (11th Cir. 2020); Pharaohs GC v. United States Small Bus.
Admin., 990 F.3d 217, 226-28 (2d Cir. 2021). In determining the
meaning of a particular provision, a court should consider the
placement of the provision within the larger statutory scheme.

Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006)
("Interpretation of a word or phrase depends upon reading the
whole statutory text"). Here, the provision granting SBA
discretion over loan terms, conditions, and processes is found
at the beginning of paragraph (36) of § 636, following the
definition section in § 636(a)(36)(A) (paragraph (36)
establishes the CARES ACT changes to 7(a) loans).

The § 636(a)(36)(B) discretion-granting provision is
followed closely by § 636(a)(36)(D), which changes several
Section 7(a) eligibility requirements. See § 636(a)(36)(D)(i)
(changing employee number eligibility requirements); (D)(ii)
(extending coverage to sole proprietors, independent
contractors, and certain self-employed individuals);
(D)(iii)(III) (extending coverage to nonprofits). Congress
explicitly granted SBA discretion over unaltered loan terms,
conditions, and processes, and then proceeded to lay out a
series of explicit changes to certain loan eligibility
requirements. Because the provision granting discretion precedes
changes to loan eligibility requirements, it follows that
Congress intended the discretionary grant to cover unaltered
loan eligibility requirements.

The context of the CARES Act and specifically §
636(a)(36)(B) within the Section 7(a) loan program of the Small

Business Act further evidences the broad discretion Congress has granted to SBA. The Small Business Act of 1958 empowers SBA to "establish general policies…particularly with reference to…granting and denial of applications for financial assistance;" "make such rules and regulations as necessary to carry out the authority vested in [it];" and "take any and all actions…[it] determines…are necessary or desirable in making…loans." 15 U.S.C. §§ 633(d); 634(b)(6),(7). This language grants SBA broad discretion in setting the eligibility requirements for loan distribution.

When Congress created the CARES Act, it did not create a new statutory scheme for loan disbursement, but instead temporarily expanded SBA's business-loan authority under the Small Business Act by adding a new paragraph (36) to Section 7(a). Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 at § 1102(a). Paragraph (36) enumerates specific ways in which the processes for loan disbursement were to vary from Section 7(a) but did not alter SBA's power to exclude certain businesses from the loan program; indeed, Congress explicitly preserved SBA's discretion in § 636(a)(36)(B). Because the CARES Act was legislated into a pre-existing statutory scheme which granted SBA broad authority over the granting and denial of loan applications, and because the CARES Act does not specifically curtail this power, but rather

17

explicitly preserves it in § 636(a)(36)(B), SBA has discretion under the CARES Act to exclude certain businesses from the loan program.

2. Whether Congress Curtailed SBA's Preexisting Authority over Loan Eligibility in § 636(a)(36)(D)(i)

The Western District of Louisiana has considered whether SBA violated the CARES Act by incorporating the 13 C.F.R. § 120.110 "business of lending" eligibility restriction into the PPP. <u>DACO Inv. v. United States Small Bus. Admin.</u>, No. 6:22-CV-01444, 2024 WL 750594, at *5 (W.D. La. Feb. 22, 2024), <u>motion to certify appeal granted sub nom. DACO Invs., LLC v. US Small Bus. Admin.</u>, No. 6:22-CV-1444, 2024 WL 1887668 (W.D. La. Apr. 29, 2024). In <u>DACO</u>, the court held that the CARES Act did not prevent SBA from applying the "business of lending" eligibility restriction to loans disbursed under the PPP. The court explained that because Congress expressly legislated the PPP within the pre-existing Section 7(a) statutory and regulatory scheme, "it may be presumed that Congress was aware of the pre-existing rules and regulations of the Section 7(a) program—including Section 120.110—when it placed the PPP under Section 7(a)." <u>Id.</u> at *9. The court also considered the fact that Congress expressly made eligible for PPP loans nonprofit organizations, which had previously been ineligible for Section 7(a) loans under 13

C.F.R. § 120.110(a), as evidence that Congress knew how to but chose not to explicitly alter § 120.110 in establishing the PPP. Congress intentionally left the remaining § 120.110 businesses, including those primarily engaged in lending, excluded from the loan program. Id.

In Pharaohs GC v. United States Small Bus. Admin., In Re Gateway Radiology Consultants, P.A., and DACO, the Second Circuit, Eleventh Circuit, and Western District of Louisiana, respectively, directly addressed the main argument advanced by Plaintiff Family Choice in this suit; that is, that the language in the "any business concern…shall be eligible" clause in § 636(a)(36)(D) prohibits SBA from enacting any eligibility restrictions other than the size restrictions laid out by Congress. Pharaohs GC, Inc. v. United States Small Bus. Admin., 990 F.3d 217, 226 (2d Cir. 2021); In re Gateway Radiology Consultants, P.A., 983 F.3d 1239, 1258 (11th Cir. 2020); DACO Invs., 2024 WL 750594 at *10. The Sixth Circuit also addressed this argument in a panel decision on whether to issue a stay of a district court's preliminary injunction. DV Diamond Club of Flint, LLC v. Small Bus. Admin., 960 F.3d 743, 745 (6th Cir. 2020).

In Gateway, a Chapter 11 bankruptcy debtor filed suit seeking declaratory and injunctive relief that would allow its

PPP loan to be forgiven despite a Section 7(a) requirement that loans only be disbursed to businesses of sound value (that is, not in bankruptcy). In Re Gateway 983 F.3d 1239,1246. The Eleventh Circuit, much like the Western District of Louisiana in DACO, considered the context of the PPP within Section 7(a). Id. at 1257. The court also considered the fact that the CARES Act specifically changed certain loan requirements but did not change the bankruptcy debtor exclusion and pointed to the delegation of general rulemaking authority to determine that Congress had granted broad rulemaking authority to SBA over the PPP processes not altered by the CARES Act, including whether bankruptcy debtors can receive PPP loans. Id.

The Eleventh Circuit in Gateway and the Second Circuit in Pharaohs each found that it would be "illogical" or "[un]tenable" to conclude that Congress intended the subsection of the CARES Act addressing changes to the entity size requirements to be the sole condition for loan disbursement. Id.; Pharaoh's GC Inc. 990 F.3d 217, 227. Both courts emphasized that other sections of the CARES Act which explicitly waive other eligibility requirements would be superfluous if the entity size provision established the sole criterion for eligibility. In Re Gateway 983 F.3d 1239, 1259; Pharaoh's GC Inc. 990 F.3d 217, 227. The DACO court similarly found that "Plaintiffs' interpretation [of § 636(a)(36)(D)(i)] contravenes

20

the rule of construction that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" DACO Invs., LLC v. United States Small Bus. Admin., No. 6:22-CV-01444, 2024 WL 750594 at *10 (citing Rubin v. Islamic Republic of Iran, 583 U.S. 202 (2018)). The Sixth Circuit panel in DV Diamond, however, found that the size requirement in § 636(a)(36)(D)(i) did prohibit SBA from creating other eligibility requirements, but in so holding did not consider the context of the CARES Act within Section 7(a). DV Diamond Club of Flint, 960 F.3d 743, 745

Turning to the case at hand, Plaintiff Family Choice makes the argument that § 636(a)(36)(D)(i) establishes the sole eligibility criterion to qualify for a PPP loan. [ECF No. 20] at 14. Plaintiff cites the Sixth Circuit decision in DV Diamond to support its interpretation. Id. at 15. In DV Diamond, a Sixth Circuit panel denied a stay of an injunction against SBA preventing it from denying DV Diamond a PPP loan even though DV Diamond was a business ineligible for a Section 7(a) loan under 13 C.F.R. § 120.110(p) (excluding from Section 7(a) loans businesses that present live performances of a prurient sexual nature). DV Diamond Club of Flint, 960 F.3d 743, 747. The panel read § 636(a)(36)(D)(i) broadly as establishing the only criterion required for loan eligibility. Id. at 746, 747. It

21

pointed to Congress's intent in passing the CARES Act, which was
to provide relief to as many small businesses as possible. Id.
at 746. However, the panel did not consider the positioning of
the PPP within the pre-existing Section 7(a) framework, relying
on extrinsic indications of congressional intent rather than the
surrounding statutory language to determine the meaning of an
ambiguous phrase. Id.

Although under Section 7(a) SBA has broad power to grant
and deny loans, Plaintiff posits that Congress intended for the
eligibility criteria in Paragraph (36) to be the only criteria
considered by SBA when deciding whether to grant a PPP loan to a
business. [ECF No. 20] at 11. Plaintiff suggests that the size
requirement in § 636(a)(36)(D) of the Act is the only limitation
Congress intended to place upon loan eligibility. Id. at 2.
Plaintiff's broad reading of § 636(a)(36)(D)(i) is inconsistent
with the statutory context of this provision, both within
paragraph (36) and within Section 7(a) as a whole. As Plaintiff
correctly states, § 636(a)(36)(D)(i) does contain both expansive
language "any business concern" and mandatory language "…shall
be eligible." On its own, this phrasing appears to extend PPP
coverage to any business concern that meets the size criteria,
and the mandatory language appears to negate a grant of
discretion to SBA in determining loan eligibility.

However, when determining the meaning of a phrase within a
statute, a court should look to the statute as a whole for
context, rather than to the narrow provision alone to determine
its meaning. King v. Burwell, 576 U.S. 473, 486 (2015)
("oftentimes the meaning—or ambiguity—of certain words or
phrases may only become evident when placed in context."). Here,
the expansive phrase "any business" appears in a statutory
provision that relaxes the preexisting size requirements
established by SBA's rules and regulations. (For original
Section 7(a) small business size requirements see 15 U.S.C. §
632(a)(1), (2); 13 C.F.R. §§ 120.100(d), 121.101, 121.301,
121.201.) Section 636(a)(36)(D)(i) of the CARES Act altered
these requirements by increasing the maximum number of employees
businesses in certain industries could have and still qualify
for a loan. The language "in addition to small business
concerns, any business concern…shall be eligible to receive a
covered loan if" [it falls within the new increased size
limitations] lends itself to narrow interpretation. Under this
interpretation, "small business concerns" means businesses that
previously qualified for Section 7(a) loans under the statute
and regulations only extending coverage to smaller businesses,
whereas the language "any business concern…shall be eligible"
expresses Congress's intent to extend eligibility to a business
whose size exceeds that allowed under the preexisting

requirements but falls within the newly established size limitations. Plaintiff asserts a broad reading of "any business concern…shall be eligible," but the context of the language constrains it to its place within the statute; that is, extending loan eligibility to businesses previously too large to qualify.

Additionally, Plaintiff's broad reading of "any business concern…shall be eligible" renders other CARES Act provisions superfluous. As mentioned above, § 636(a)(36)(D)(i) is one of many provisions within the CARES Act which affirmatively relaxes specific 7(a) terms and conditions. To read it broadly would render the other provisions meaningless, thus contravening the rule of construction that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." DACO Invs., 2024 WL 750594 at *10 (citing Rubin v. Islamic Republic of Iran, 583 U.S. 202 (2018)). A narrow reading, constraining the language in § 636(a)(36)(D)(i) to its purpose of allowing larger entities to receive PPP loans does not result in superfluous statutory language.

Additionally, as discussed above, reading § 636(a)(36)(D)(i) within the context of 7(a), which grants broad discretionary powers to SBA, also supports a narrow reading of the statute. In

§ 636(a)(36)(B), Congress specifically allows SBA to retain discretion over unaltered terms, conditions, and processes by using the discretionary term "may." "The permissive word 'may' vests SBA with discretionary authority." Gateway 983 F.3d at 1257. Because SBA has discretionary authority over unaltered terms, conditions, and processes, and because Congress did not explicitly alter the 13 C.F.R. § 120.110(b) exclusion of businesses primarily engaged in lending, SBA continues to maintain discretion over whether to exclude such businesses from receiving a loan.

Congress's later passage of both the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("EAA") and the American Rescue Plan Act ("ARPA") supports Defendants' argument that the "any business concern language" should be constrained to its purpose of increasing the employee eligibility threshold for a business to qualify as a small business for purposes of the PPP. [ECF No. 24] at 17. Plaintiff argues that by explicitly incorporating the preexisting 13 C.F.R. § 120.110 limitations into the EAA and ARPA, Congress demonstrated its awareness of the § 120.110 limitations and therefore must have chosen not to explicitly adopt those exclusions. Thus, Plaintiff maintains, Congress only meant to apply SBA's preexisting exclusions to "second-draw loans," governed by the EAA and ARPA, not "first-draw loans" such as Plaintiff's. However, this argument

overlooks the fact that the EAA and ARPA both extended SBA's
authority to guarantee first-draw loans to faith-based
organizations and nonprofits, expressly waiving application of
13 C.F.R. § 120.110(k).

If Plaintiff is correct and Congress did not intend 13 C.F.R.
§ 120.110 to apply to first-draw loans, there would be no reason
for Congress to explicitly except from the exclusion a specific
type of business barred under the rule. Plaintiff's reading of
the EAA makes this section gratuitous, because faith-based
organizations that meet the size requirement would already be
covered and there would be no need to explicitly include them
later. Moreover, Congress's expansion of PPP eligibility to
certain types of businesses and not others shows that "Congress
knew how to suspend or render inapplicable to PPP loans the
traditional Section 7(a) requirements when it wanted to do so,"
and yet there is no carve-out for financial businesses in the
CARES Act, EAA, or ARPA. Gateway 983 F.3d at 1257.

Using traditional methods of statutory interpretation, this
court concludes that SBA's decision to incorporate the
preexisting exclusionary rule found at 13 C.F.R. § 120.110 into
the First IFR's Exclusion Rule did not violate the CARES Act.
Because the statutory context of the Act's "any business
concern" clause evidences its purpose as merely extending

26

eligibility to larger companies than would have previously qualified, and because both the Section 7(a) statutory background and the CARES Act itself grant SBA discretion over determining loan eligibility, this Court finds that SBA had discretion under the CARES Act to exclude the businesses in 13 C.F.R. § 120.110 which Congress did not explicitly include in the PPP, including those primarily engaged in lending.

Therefore, as to this issue of discretion, Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

C. Was SBA's Adoption of the Exclusionary Rule Arbitrary and Capricious in Violation of the APA?

Even if Congress has granted agency discretion, the agency can still act arbitrarily and capriciously in exercising that discretion. If a court finds that an agency has acted arbitrarily or capriciously, the court should set aside such agency action, finding, or conclusion as invalid. 5 USC § 706(2)(A). For a challenged action to be upheld, an agency must present a "'reasoned analysis' to justify the disparate treatment of regulated parties that seem similarly situated." ANR Storage Co. v. FERC, 904 F.3d 1020, 1024 (D.C. Cir. 2018)(quoting W. Deptford Energy, LLC v. FERC, F.3d 10, 21 (D.C. Cir. 2014)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute

its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Plaintiff's Motion for Summary Judgment presents three grounds upon which SBA allegedly acted arbitrarily and capriciously. First, Plaintiff contends that SBA failed to provide a contemporaneous explanation for excluding financial companies from the PPP. [ECF No. 19] ¶ 7. Second, Plaintiff suggests that SBA arbitrarily and capriciously withdrew its historical lending exclusions with respect to certain businesses only. Id. ¶6. Third, Plaintiff alleges that even if SBA did not act arbitrarily and capriciously in applying the historical exclusions to the CARES Act, the process by which SBA forgave loans resulted in forgiveness being arbitrarily granted or denied to similarly situated businesses. Id. Below is the Court's discussion of each of these three arguments.

1. Did SBA provide a thorough and reasoned explanation for excluding financial companies from the PPP?

Plaintiff first argues that SBA's exclusion of consumer lending companies lacks any substantive justification in the Exclusion Rule text in the First IFR or in the administrative record. [ECF No. 32] at 14. When reviewing an agency's explanation for a given action, a court should consider "whether

28

the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The Supreme Court has explained that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Id. This rationalization cannot be post hoc, but it must be "based on the reasons [the agency] gave when it acted." Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891, 1908, 1909 (2020). An agency engages in post hoc rationalization when it offers arguments during litigation that are unrelated to any reason given at the time of the action. DACO Invs., LLC v. United States Small Bus. Admin., No. 6:22-CV-01444, 2024 WL 750594 at *11 (W.D. La. Feb. 22, 2024), motion to certify appeal granted sub nom. Daco Invs., LLC v. US Small Bus. Admin., No. 6:22-CV-1444, 2024 WL 1887668 (W.D. La. Apr. 29, 2024) (citing Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891, 1907-09.)

In the case at hand, Plaintiff argues that SBA gave no contemporaneous justification for including § 120.110 businesses in the First IFR's Exclusion Rule, and that there is no evidence providing any rational basis for SBA's decision to do so. [ECF

No. 32] at 15. Defendants do not offer any contemporaneous evidence from the administrative record explaining the incorporation of 13 C.F.R. § 120.110 into the First IFR. However, Defendants do offer the declaration of Dianna Seaborn, Director of SBA's Office of Financial Assistance in the Office of Capital Access, explaining SBA's reasons for including the the 13 C.F.R. § 120.110 businesses in the Exclusion Rule. [ECF No. 45-1] ¶ 2.

Plaintiff argues that Ms. Seaborn's declaration is insufficient to justify the agency's action because it is an impermissible post hoc rationalization made for litigation. [ECF No. 46] at 6. "However, courts have allowed agency officials who participated in agency action to explain their actions through affidavits or live testimony if no formal findings were issued by the agency at the time of the action." DACO Invs., LLC v. United States Small Bus. Admin., No. 6:22-CV-01444, 2024 WL 750594 (W.D. La. Feb. 22, 2024) at *12, motion to certify appeal granted sub nom. Daco Invs., LLC v. US Small Bus. Admin., No. 6:22-CV-1444, 2024 WL 1887668 (W.D. La. Apr. 29, 2024). Here, as the DACO court noted, Ms. Seaborn was involved in drafting the First IFR, and had personal knowledge of the reasons why SBA adopted the 13 C.F.R § 120.110 eligibility restrictions. Therefore, the Court may consider her statements. Id. Ms. Seaborn's declaration does not constitute a post hoc

rationalization because she is an agency official who participated in the challenged action explaining a previously unexplained agency action through affidavit. See Ensco Offshore Co. v. Salazar, No. CV 10-1941, 2011 WL 13203198, at *2 (E.D. La. Apr. 26, 2011) (citing Harris v. United States, 19 F.3d 1090, 1096 n.7 (5th Cir. 1994)); see also City of Coll. Station v. U.S. Dep't of Agric., 395 F. Supp. 2d 495, 500 (S.D. Tex. 2005) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136, overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

Ms. Seaborn explains that Congress indicated to SBA its intent that SBA provide relief to America's small businesses "as expeditiously as possible, to meet their immediate financial needs during the coronavirus emergency." [ECF No. 45-1] ¶ 5. These indications included Congress's initial authorization that SBA distribute up to $349 billion in PPP loans; Congress's positioning the PPP within the pre-existing Section 7(a) loan program; and Congress's direction that SBA authorize additional lending companies not already accredited under Section 7(a) to participate in the PPP. Id. ¶¶ 6-8. Further, Congress gave SBA only fifteen days to issue regulations implementing the PPP after the CARES Act's enactment. Id. ¶ 9. Because of the

congressionally mandated necessity to administer loans as quickly as possible, SBA was unable to provide a reasoned explanation for every decision the agency made, instead focusing on implementing the changes mandated by Congress. Congress gave SBA a brief timeline in which to administer PPP loans and explicitly gave SBA discretion over unaltered loan "terms, conditions, and processes, and Ms. Seaborn explains that SBA therefore focused on implementing the changes mandated by Congress in the CARES Act, while continuing to enforce preexisting Section 7(a) rules and regulations. Id. ¶ 14.

Ms. Seaborn further explains that when drafting the First IFR, SBA "took as its starting point Congress's instruction in 15 USC § 636(a)(36)(B), that SBA 'may guarantee loans under the same terms, conditions, and processes as loans made under' Section 7(a)." Id. ¶ 10. In order to comply with Congress's intent that the PPP should launch as quickly as possible, the agency decided to focus on implementing the express modifications the CARES Act made to Section 7(a), changing only regulations which were impacted by the CARES Act or which needed to be changed to expedite loan disbursement. Id. at 11, 12. Therefore, SBA left intact its "longtime rule" of exclusion codified at 13 C.F.R. § 120.110, apart from the rule barring

non-profits from participating in the loan program, as Congress had expressly included nonprofits in the PPP. Id. ¶ 14.

The purpose of the First Interim Final Rule ("First IFR"), Ms. Seaborn asserts, was to "inform PPP borrows and lenders . . . of what they need[ed] to know and do to apply immediately for and make PPP loans." Id. ¶ 15. The rule itself supports Ms. Seaborn's testimony, as the First IFR was dedicated to presenting and answering the questions "What do borrowers need to know and do?" and "What do lenders need to know and do?" Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811-01, 20812-15; Id. at 20815-16. Ms. Seaborn's declaration further is supported by the comments to the First IFR, which provide that "[t]he intent of the Act is that SBA provide relief to America's small businesses expeditiously." Id. at 20811. Ms. Seaborn's account contextualizes SBA's decision to retain the established Section 7(a) exclusions in the First PPP IFR and provides a rational basis for SBA's decision to do so (namely, the expediency required by Congress and the positioning of the PPP within the Section 7(a) program.)

Therefore, considering the text of the First IFR and Ms. Seaborn's declaration, the Court finds that SBA has provided sufficient reasoning to support its decision to apply 13 C.F.R.

§ 120.110 to the PPP. As to the claims on this issue,
Plaintiff's motion is DENIED and Defendants' motion is GRANTED.

2. Did SBA arbitrarily and capriciously withdraw its
   historical lending exclusions with respect to certain
   businesses only?

Plaintiff further argues that SBA acted arbitrarily and
capriciously by including in the PPP some business types listed
under 13 C.F.R. § 120.110 while others remained excluded. [ECF
No. 20] at 23. As discussed above, the EAA and ARPA permitted
nonprofits and faith-based organizations, both of which are
excluded from receiving Section 7(a) loans under the
Exclusionary Rule, to nevertheless participate in the PPP. On
April 28, 2020, SBA issued a Second Interim Final Rule ("Second
IFR"), created to "supplement previous regulations and guidance
on several important, discrete issues" pertaining to the PPP.
Business Loan Program Temporary Changes; Paycheck Protection
Program—Requirements—Promissory Notes, Authorizations,
Affiliation, and Eligibility, 85 Fed. Reg. 23450-01. Under the
Second IFR, entities in the gambling business and certain
government-owned hospitals, both of which would normally be
excluded from a Section 7(a) loan program, also qualified for
PPP loans. Id. at 23451 III(2)(c),(d). The Administrator
determined that allowing these business concerns to receive PPP

loans was "more consistent with the policy aim of making PPP loans available to a broad segment of US businesses." Id. at 23451. Plaintiff argues that this reasoning would also support creating a carve-out for lending businesses, and that SBA acted arbitrarily and capriciously in creating a carve-out for some 13 C.F.R. § 120.110 businesses but not others. [ECF No. 20] at 24. As the DACO court found, this reasoning fails for two reasons. DACO Invs., LLC v. United States Small Bus. Admin., No. 6:22-CV-01444, 2024 WL 750594 (W.D. La. Feb. 22, 2024) at *13, motion to certify appeal granted sub nom. Daco Invs., LLC v. US Small Bus. Admin., No. 6:22-CV-1444, 2024 WL 1887668 (W.D. La. Apr. 29, 2024).

First, Plaintiff is not challenging any rule or regulation created by SBA as arbitrary or capricious, but instead "challenge[s] the SBA's inaction in not adding an additional exception in the Second IFR for lending institutions." Id. at *14. However, Plaintiff never requested that SBA review its decision to exclude lending businesses from the PPP. SBA's decision to modify certain exceptions in the Second IFR "does not require the agency to sua sponte address every possible modification or change to the § 120.110 exclusions for the PPP." Id. As the court stated in DACO, Plaintiff should have requested a rulemaking to add the exception and, if denied, appealed from that denial. Id.

Second, Plaintiff's discriminatory treatment argument fails to explain how financial businesses primarily engaged in distributing loans are similarly situated to gambling concerns, nonprofits, faith-based organizations, or hospitals, such that SBA's failure to include lending businesses in the PPP was arbitrary and capricious. Plaintiff asserts that the Administrator's reasoning behind including gambling businesses and hospitals in the PPP was to further the congressional policy of making PPP loans available to a broader segment of the economy. [ECF. No. 20] at 24. Plaintiff argues that including lending businesses in the PPP would also further this policy, and that therefore excluding lending businesses while including other § 120.110 entities was inconsistent with Congress's goals in enacting the PPP. Id. However, this argument would also apply to the other business sectors excluded from the PPP under the First IFR and § 120.110. Agencies are not required to address all possible related issues at once, and Plaintiff has not shown that lending companies are similarly situated to the § 120.110 businesses that were allowed to partake in the program. DACO, 2024 WL 750594 at *14 (citing Mobil Oil Expl. & Producing Se. Inc. v. United Distribution Companies, 498 U.S. 211 at 213 (1991)).

Because Plaintiff cites no authority that lending companies are "similarly situated" to the § 120.110 businesses included in

the PPP, Plaintiff's motion as to those claims is DENIED, and
Defendants' motion is GRANTED.

3. Did SBA act arbitrarily and capriciously in denying
   Plaintiff forgiveness while granting loan forgiveness to
   other concerns in the business of lending?

Plaintiff also argues that the process by which SBA decided
which loans to forgive was inconsistent in violation of the APA.
[ECF No. 20] at 25. Plaintiff notes that an agency must give a
"'reasoned analysis' to justify disparate treatment of regulated
parties that seem similarly situated;" otherwise, the decision
will be found arbitrary and capricious.  [ECF No. 32] at 16
(quoting DACO, 2024 WL 750594 at *15). Plaintiff has established
that it was denied forgiveness because it was flagged as a
consumer lending company as defined in 13 C.F.R. § 120.110(b).
[ECF No. 19-3]. Plaintiff has gathered data that 1,299 allegedly
similarly situated consumer lending companies received loans
which were forgiven by SBA. [ECF No. 25].

To explain the PPP loan process, Defendants present the
declaration of Vanessa K. Piccioni, who explains the loan
forgiveness process, and of Jennifer N. Simpson, who supplements
Ms. Piccioni's declaration with additional data. [ECF No. 24-1];
[ECF 43-1]. Each borrower under the PPP has a North America
Industry Classification System ("NAICS") code, which identifies

the industry in which the borrower conducts business. [ECF No. 24-1] ¶ 3. Loans were initially distributed by third party lenders without SBA approval because of the tight timeline Congress gave the agency to disburse over $300 billion dollars to meet the urgent needs of small businesses for financial assistance. Id. ¶ 4. Because of the "streamlined underwriting process," SBA used a two-step process to forgive qualified loans and ensure the fiscal integrity of the program. Id. ¶ 11. The first step involved an automated screening of the entire PPP loan portfolio to identify and flag potential noncompliance with eligibility requirements, followed by a manual review of loans flagged during the initial review. Id. ¶¶ 13, 14.

Ms. Piccioni explains that Plaintiff's loan was flagged for manual review because it was identified as having a NAICS code associated with financial businesses, and Plaintiff was ultimately denied loan forgiveness as an ineligible business under 13 C.F.R. § 120.110(b). Id. ¶ 16. Of the other 1299 loans identified by Plaintiff, 1,090 went only through automatic review and were not flagged as lenders for additional review, while the remaining 209 loans were forgiven after undergoing manual review. Id. ¶ 17. While Plaintiff asserts that this data indicates that SBA's regulations and forgiveness criteria are unreasonably applied across businesses who are the same or similarly situated, Ms. Piccioni suggests that the companies

whose loans were forgiven after manual review may not in fact have been similarly situated to Plaintiff. Id. ¶ 18.

Some businesses with a NAICS code similar to Plaintiff's fall under one of the exceptions to 13 C.F.R. § 120.110(b), including (1) pawn shops, if more than 50% of their revenue for the previous year was from the sale of merchandise rather than from interest on loans; (2) businesses which finance sales in the regular course of business as long as less than 50% of their revenue comes from financing sales; (3) mortgage companies that service loans or make loans if they do not hold the loans, but instead sell them within 14 calendar days of loan closing; (4) check-cashing businesses that receive more than 50% of their revenue from the service of cashing checks; and (5) businesses engaged in providing services of a financial advisor on a fee basis if they do not use loan proceeds to invest in its own portfolio of investments. [ECF No. 43-1] ¶¶ 14-18. If a business has a NAICS code indicating that it is primarily engaged in lending and it falls within one of these exceptions, it will still be eligible for PPP loan forgiveness. [ECF No. 43-1] ¶ 13.

SBA implemented the two-step review process to sort through the 12 million loans for which forgiveness had been sought. [ECF No. 24-1] ¶ 11. Plaintiff suggests that this process resulted in the irresponsible granting and denial of loan forgiveness.

Defendants offer a different interpretation of the same data: that these loans were forgiven because they fell within an exception to 13 C.F.R. § 120.110(b). [ECF No. 43-1]. Plaintiff has argued that by forgiving loans given to other businesses with the same NAICS as Plaintiff, SBA acted arbitrarily and capriciously and that Defendants' alternative explanation that these businesses may have fallen within an exception to § 120.110(b) is merely hypothetical. [ECF No. 20] at 26; [ECF No. 32] at 16. In response to this argument, SBA selected a random sample consisting of 41 of the 209 loans to lending businesses and reviewed those loans a second time to determine whether they fell within any of the above exceptions. [ECF No. 43-1] at 6. The results of this review are documented in Ms. Simpson's declaration. [ECF No. 43-1].

Defendant SBA found that of the 41 loans selected for reevaluation, six fell within the pawn shop exception; seven were businesses that undertook financing in their regular course of business with less than 50 percent of revenue from financing sales; thirteen fell within the mortgage company exception; two fell within the check-cashing business exception; two fell within the financial advisor exception; five were determined to be ineligible because the NAICS code had been incorrectly entered by the borrower or third-party lender; three were eligible as they provided documentation that they were not

lenders; two had no final determination made as they were part of litigation and ultimately settled; and one loan will be reassessed due to an insufficiency of information to determine eligibility. Id. ¶ 20. This evidence supports Defendants' interpretation of the data that the loans which were forgiven despite having the same NAICS code as Plaintiff fell within one of the exceptions to § 120.110(b).

Plaintiff offers no such evidence to support its interpretation of the data, relying instead on assertions that the 1,299 financing companies whose loans were forgiven were in fact similarly situated to Plaintiff. SBA's analysis of 41 of the forgiven loans demonstrates that none of the 41 companies whose loans were forgiven were in fact similarly situated to Plaintiff; each company either fell within an exception or had another extenuating circumstance which did not apply to Plaintiff. Because the businesses whose loans were forgiven were not in fact similarly situated to Plaintiff, Plaintiff cannot show that SBA acted arbitrarily and capriciously in denying it loan forgiveness while granting forgiveness to similarly situated businesses.

As such, on this issue Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED.

41

IV.   Conclusion

As to each of Plaintiff's claims, Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.

Accordingly,

IT IS ORDERED that Defendants' motion for summary judgment [ECF No. 25] is GRANTED, and Plaintiff's motion for summary judgment [ECF No. 19] is DENIED.

A Final Judgment shall issue this day in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED, this the 25th day of September, 2024.


/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE